**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KINGSWAY GENERAL INSURANCE
COMPANY,

           Plaintiff,           Case No. 08-12123

v.           HON. MARIANNE O. BATTANI

QUINTANA AUSTIN, CAROLYN AUSTIN,
MICHIGAN INSURANCE COMMISSIONER,
MICHIGAN CATASTROPHIC CLAIMS FUND,
STATE OF MICHIGAN, MICHIGAN
ASSIGNED CLAIMS FACILITY, MICHIGAN
INSURANCE BUREAU, TITAN INSURANCE
COMPANY,

           Defendants.

_____/

**OPINION AND ORDER GRANTING THE MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION'S MOTION TO DISMISS, THE STATE OF MICHIGAN'S MOTION TO
DISMISS, AND TITAN INSURANCE COMPANY'S MOTION TO DISMISS**

**I.    INTRODUCTION**

Before the Court are the Michigan Catastrophic Claims Association's (MCCA) motion to dismiss, (Doc. 18), the State of Michigan's motion to dismiss, (Doc. 29), and Titan Insurance Company's motion to dismiss, (Doc. 42). All three motions to dismiss argue that Plaintiff Kingsway General Insurance Company (Kingsway) failed to state a claim with regard to its claims that (1) it is not obligated to provide personal injury protection (PIP) benefits to Quintana Austin under the Michigan No Fault Automobile Insurance Act (No Fault Act), M.C.L. § 500.3101 *et seq.*; (2) the MCCA should indemnify Kingsway for the benefits Kingsway provides to Austin; and (3) that the No

Fault Act violates the Commerce Clause and Kingsway's right to Equal Protection. The State of Michigan further argues that, under the Eleventh Amendment, it and the Michigan Office of Financial and Insurance Regulation (OFIR),[1] are completely immune from suit in federal court, and that the Michigan Insurance Commissioner[2] is immune from suit in federal court on any state law claims. (See doc. 29). Because each of Kingsway's claims fail as a matter of law, the Court grants the motions to dismiss the complaint.

## II.     STATEMENT OF FACTS

In its amended complaint, Kingsway alleged the following. On January 13, 2003,[3] at approximately 3:45 a.m., a Mack truck insured by Kingsway struck Quintana Austin, a Michigan pedestrian. Austin was a 15-year old pedestrian walking on the right shoulder of eastbound I-96 in Detroit. Neither Austin nor any member of her household owned a vehicle insured under the No Fault Act. Austin submitted a claim, through the No Fault Act, for her bodily injuries, and Kingsway has paid Austin benefits in excess of $1,932,574.38.

Kingsway's amended complaint claims that, (1) it is not obligated to pay PIP benefits to Michigan residents under M.C.L. § 500.3163; (2) it is not required to pay PIP

---

[1] This department has replaced the Michigan Insurance Bureau.

[2] This is another name for the Commissioner of OFIR.

[3] The precise date of the accident is unclear because the complaint also asserts that the accident occurred on January 11, 2003. The precise date of the accident, however, does not affect the resolution of the motions to dismiss.

benefits to Austin because it is not an insurer under M.C.L. § 500.3101; (3) it is not required to pay more than its policy limits; and (4) by preventing foreign insurers from receiving indemnification from the MCCA, the No Fault Act violates the Commerce Clause and Kingsway's right to Equal Protection.

## III.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a district court to dismiss a complaint that fails "to state a claim upon which relief may be granted." "This rule allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in the complaint is true." Tidik v. Ritsema, 938 F.Supp. 416, 421 (E.D. Mich. 1996). Thus, when faced with a Rule 12(b)(6) motion to dismiss, a district court "must construe the complaint in the light most favorable to the plaintiff, [and] accept all factual allegations as true." In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993). To defeat a motion to dismiss, a plaintiff's complaint must comply with Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 550 U.S. ----, 127 S.Ct. 2197, 2200 (2007) (quotations and omission omitted).

## IV. ANALYSIS

The Defendants argue (1) that the Eleventh Amendment bars the State of Michigan and the OFIR from being sued in federal court, and the Commissioner of OFIR from being sued in federal court based on state law; (2) that the No Fault Act obligates Kingsway to pay PIP benefits to Austin; and (3) that the No Fault Act does not violate either the Commerce Clause or Kingsway's right to Equal Protection.

### A. *Immunity From Suit in Federal Court*

"The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." Grinter v. Knight, 532 F.3d 567, 572 (11th Cir. 2008). "This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). The Supreme Court created an important exception to this rule, however, when a suit challenges the constitutionality of a state official's action. See Ex parte Young, 209 U.S. 123, 159-60 (1908). In particular, a state officer does not have immunity under the Eleventh Amendment when the officer engages in unconstitutional action. Pennhurst State Sch. & Hosp., 465 U.S. at 102. "Since the State could not authorize the action, the officer was stripped of his official or representative character and was subjected to the consequences of his official conduct." Id. (alteration and quotation omitted). But such suits are only allowed to seek injunctions governing the official's future conduct. Id. at 102-03. Additionally, a suit may not be flied against a state officer alleging a violation of state law because such a suit,

> does not vindicate the supreme authority of federal law. On the contrary, it
> is difficult to think of a greater intrusion on state sovereignty than when a
> federal court instructs state officials on how to conform their conduct to
> state law. Such a result conflicts directly with the principles of federalism
> that underlie the Eleventh Amendment.

Id. at 106.

There is no evidence indicating, and Kingsway does not claim, that either the State of Michigan or OFIR have consented to be sued in federal court. Accordingly, the Eleventh Amendment bars suit against the State of Michigan and OFIR in federal court, and these two parties must be dismissed from this suit. See Grinter, 532 F.3d at 572. In addition, the Michigan Insurance Commissioner may not be sued in federal court based on the Commissioner's alleged violation of state law. See Pennhurst State Sch. & Hosp., 465 U.S. at 106. Therefore, the Eleventh Amendment bars Kingsway from suing the Commissioner of OFIR in federal court based on its claim that Michigan's No Fault Act does not require Kingsway to provide benefits to Austin. Accordingly, that claim must be dismissed as it relates to the Commissioner of OFIR. That claim remains, however, against the remaining defendants, and the Court will now address it.

### B. *Whether the No Fault Act Obligates Kingsway to Provide PIP Benefits to Austin*

Kingsway argues that the No Fault Act does not obligate it to provide PIP benefits to Austin because (1) M.C.L. § 500.3163 only requires the payment of PIP benefits to non-Michigan residents injured in an accident in Michigan; (2) it is not an insurer under M.C.L. § 500.3101; and (3) Ontario law, under which Kingsway wrote the

5

insurance policy at issue, limits benefits to $1,000,000. As will be shown, Kingsway's arguments fail.

Under M.C.L. § 500.3163(1),

> An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, is subject to the personal and property protection insurance system under this act.

Furthermore, under M.C.L. § 500.3163(2) a nonadmitted insurer may voluntarily file this certification. If such a certification,

> applies to accidental bodily injury or property damage, the insurer and its insureds with respect to that injury or damage have the rights and immunities under this act for personal and property protection insureds, and claimants have the rights and benefits of personal and property protection insurance claimants, including the right to receive benefits from the electing insurer as if it were an insurer of personal and property protection insurance applicable to the accidental bodily injury or property damage.

M.C.L. § 500.3163(3). In 1997, Kingsway chose to file the § 3163(2) certification.

Nothing in this language from § 3163 indicates that it only requires companies filing the § 3163 certification to pay benefits to non-Michigan residents. Kingsway asserts, however, that the heading of § 3163 supports its argument that benefits only have to be paid to non-Michigan residents. The heading of § 3163 that was applicable at the time of the accident at issue in this case was: "Certification regarding automobile liability policy protections for nonresidents; limitations on recovery for accidental bodily injury."

The text of § 3163(1), however, indicates that this heading is referring to nonresident owners and operators of vehicles as opposed to nonresident claimants. In particular, § 3163(1) only refers to a nonresident once, and that reference is in the context of a nonresident as the owner or operator of the vehicle causing the injury and/or damage. Furthermore, § 3163(1) does not differentiate between residents and nonresidents when it states that *any* accidental bodily injury or property damage arising from the nonresident's ownership or operation of the motor vehicle is subject to the No Fault Act. Accordingly, contrary to Kingsway's assertion, the heading of § 3163 does not indicate that certification under § 3163 only requires benefits to be paid to nonresidents.

Furthermore, even if the heading of § 3163 did indicate that the section was only referring to nonresident claimants, it would not limit the scope of the text of § 3163 under the Title-Object Clause of the Michigan Constitution due to the fact the Title-Object clause only requires that the title of an act express the purpose of an act. See M.C.L. Const. Art. 4, § 24 ("No law shall embrace more than one object, which shall be expressed in its title."); Wayne County Bd. of Comm'rs v. Wayne County Airport Auth., 253 Mich. App. 144, 185 (Mich. Ct. App. 2002) (stating that, under the Title-Object Clause, "the title of an act must express the general purpose or object of the act"). Accordingly, because the section heading of § 3163 is not the title of an act, the Title-Object Clause does not apply.

Some courts, in determining whether recovery is appropriate under § 3163, have used a test that looks to the injuries suffered by "the nonresident." See, e.g., Goldstein v. Progressive Cas. Ins. Co., 218 Mich. App. 105, 109 (Mich. Ct. App. 1996) (stating

7

that one of the requirements for carrier liability under § 3163 is that there is a sufficient causal relationship between the nonresident's injuries and his use of the motor vehicle); Transport Ins. Co. v. Home Ins. Co., 134 Mich. App. 645, 651 (Mich. Ct. App. 1984) (same). But these cases do not indicate that recovery should be limited to nonresidents because these cases were addressing situations where the injured party was a nonresident. Therefore, due to the fact that there were no relevant injuries to a Michigan resident, the courts only needed to refer to the injuries of nonresidents.

Accordingly, because the plain language of § 3163 does not differentiate between Michigan claimants and nonresident claimants, and no Michigan court has indicated clearly that § 3163 does not require the payment of benefits to Michigan residents, this Court declines to limit § 3163 and holds that § 3163 requires the payment of benefits to both Michigan and non-Michigan residents.

Kingsway also asserts that it does not have to provide PIP benefits to Austin because it is not an insurer under M.C.L. § 500.3101. But, even assuming that Kingsway is not an insurer under § 3101, it is nevertheless required to provide benefits because it voluntarily filed a certification under § 3163(2). This subjects Kingsway to the No Fault Act when a vehicle it insures is involved in an accident in Michigan. See M.C.L. § 500.3163. Furthermore, as will be shown, the No Fault Act obligates Kingsway to pay PIP benefits to Austin.

Under M.C.L. § 500.3115, except as provided in M.C.L. § 500.3114(1), a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits first from "[i]nsurers of owners or registrants of motor vehicles involved in the accident." Section 3114(1) only serves to limit § 3115

such that an injured nonoccupant of a motor vehicle must first seek benefits from her own insurer or the insurer of her spouse or other relative with whom she is domiciled, before she may seek benefits, under § 3115, from the insurer of the vehicle involved in the accident. See Shinabarger v. Citizens Mut. Ins. Co., 90 Mich. App. 307, 311 (Mich. Ct. App. 1979). Austin was uninsured and did not have any insured relatives when she was hit by the Kingsway-insured truck. Therefore, Kingsway, as the insurer of the vehicle involved in the accident, is required to provide benefits due to its voluntary § 3163(2) certification. See M.C.L. §§ 500.3115, 500.3163. Likewise, any limits on benefits contained in Ontario law are not relevant because, by filing the aforementioned § 3163 certification, Kingsway voluntarily chose to subject itself to Michigan law when an individual covered by its insurance had an accident in Michigan.

### *C. Commerce Clause Challenge*

Kingsway's amended complaint claims that the No Fault Act violates the Commerce Clause because it indemnifies Michigan insurers, but not out-of-state insurers, for the payment of particular benefits.

The Commerce Clause provides, "The Congress shall have Power . . . To regulate Commerce . . . among the several States." U.S. Const., Art. I, § 8, cl. 3. Therefore, the Commerce Clause is a grant of authority to Congress. Western and S. Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 652 (1981). However, this grant of authority contains an implied limitation upon the power of states to interfere or impose burdens on interstate commerce. Id. This limitation is known as the dormant

Commerce Clause.  See Lenscrafters, Inc. v. Robinson, 403 F.3d 798, 802 (6th Cir. 2005).

Congress's power to regulate commerce among the states includes the power to confer upon the states the power to restrict the flow of interstate commerce.  Western and S. Life Ins. Co., 451 U.S. at 652.  Congress exercised this power when it passed the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, which removed all limitations on the authority of states to regulate and tax the business of insurance.  See id. at 653.  Any state action within the scope of Congress's authorization is not subject to challenge under the Commerce Clause.  Id. at 652-53.  Accordingly, "Congress removed all Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance when it passed the McCarran-Ferguson Act."  Id. at 652.

The No Fault Act regulates "the business of insurance" and, as such, it is not subject to challenge under the dormant Commerce Clause.  See 15 U.S.C. § 1012; M.C.L. § 500.3101 *et seq.*; Western and S. Life Ins. Co., 451 U.S. at 653.  Accordingly, Kingsway's Commerce Clause challenge fails.[4]

## D.  Equal Protection Challenge

The Defendants argue that the No Fault Act does not violate Kingsway's right to Equal Protection because it is rational for the No Fault Act only to provide indemnification to member insurers.  The Defendants note that member insurers must

---

[4] Furthermore, Kingsway's Commerce Clause challenge would fail even it was not barred by the McCarran-Ferguson Act because, as the discussion of Kingsway's Equal Protection challenge will show, the No Fault Act does not discriminate between Michigan insurers and out-of-state insurers.

pay premiums for that indemnification coverage. Kingsway argues that the No Fault Act's limitation of MCCA indemnification is a form of economic protectionism designed to benefit Michigan insurers.

The Fourteenth Amendment guarantees that the government shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Where, as here, an equal protection challenge does not involve a protected class, rational basis review is appropriate. Romer v. Evans, 517 U.S. 620, 631 (1996).

> Under rational basis scrutiny, government action amounts to a constitutional violation only if it is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational. The plaintiffs bear the burden of demonstrating that the government lacks a rational basis, and they may satisfy this burden either by negating every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will. The State, conversely, bears no burden of proof; its legislative choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data.

Michael v. Ghee, 498 F.3d 372, 379 (6th Cir. 2007) (quotations omitted), cert. denied, 128 S.Ct. 2067 (2008).

Under the No Fault Act, any insurer engaged in writing the coverages the act requires within Michigan is a member of the MCCA. M.C.L. § 500.3104(1). The MCCA provides full indemnification to member insurers for the payment of PIP benefits in excess of an amount that is set based on the period during which the vehicle accident policy is issued or renewed. Id. § 500.3104(2). For example, the MCCA reimburses its members for the payment of more than $300,000 under an eligible motor vehicle accident policy that was issued in January 2003. Id. § 500.3104(2)(b). The Michigan legislature empowered the MCCA to charge its members a premium that would cover

11

the anticipated losses and expenses of the MCCA. M.C.L. § 500.3104(7)(d). Accordingly, each member of the MCCA is charged a premium based on the number of cars for which the member has provided the insurance coverages required by the No Fault Act multiplied by the average premium per car. Id.

The Michigan Supreme Court has held that the MCCA must only indemnify member insurers for PIP benefits paid under a policy that provides the security required by the No Fault Act. In re Certified Question (Preferred Risk Mutual Ins. Co. v. Michigan Catastrophic Claims Ass'n), 433 Mich. 710, 719-20 (1989). Accordingly, the MCCA does not provide indemnification for benefits paid by an insurer of an out-of-state resident pursuant to the insurer's certification under § 3163. Id. at 723, 726-27. The Michigan Supreme Court explained its ruling as follows:

> In our view, the fact that the Legislature granted the [MCCA] the authority to charge premiums only with respect to policies written in Michigan providing the security required by § 3101(1) for the owners or registrants of vehicles required to be registered in the state, compels the conclusion that it intended to similarly limit the [MCCA's] liability for indemnification under § 3104(2). Put simply, we can think of no reason why the Legislature would want to provide such indemnification coverage to insurers, even member insurers who do a significant amount of business within this state, absolutely free of charge or, perhaps more appropriately, at no cost *to them*.

Id. at 725.

Therefore, the No Fault Act only allows insurers to receive MCCA indemnification if they are engaged in writing the coverages required by the No Fault Act. For example, the MCCA could not have provided indemnification to the insurer covering the truck involved in the accident at issue in this case. The truck was not required to be insured under the No Fault Act and, therefore, the policy did not provide coverages required by

the No Fault Act. Accordingly, under In re Certified Question, the MCCA could not have provided indemnification, regardless of what company was the insurer. See 433 Mich. at 719.

Other courts have found that the No Fault Act's indemnification system does not violate the right to Equal Protection, and this Court agrees. See Preferred Risk Mutual Ins. Co. v. Michigan Catastrophic Claims Assoc., 1991 U.S. Dist. LEXIS 1794, *8-*9 (E.D. Mich 1991); In re Certified Question, 433 Mich. at 729 n.18. The No Fault Act does not violate the right to Equal Protection by only providing indemnification from the MCCA for payments made pursuant to a policy providing the security required by the No Fault Act because there is a "conceivable basis" for the differential treatment. Michael, 498 F.3d at 379. The Michigan legislature empowered the MCCA to charge its members a premium that would cover the anticipated losses and expenses of the MCCA, and such a division is a rational way to allow member insurers to spread the risk of catastrophic claims. See M.C.L. § 500.3104(7)(d). Likewise, it is rational for the MCCA only to provide indemnification to insurers who have paid the premium covering the MCCA's costs and expenses.

Furthermore, there is a rational basis for the legislature not to provide a way for insurers writing coverage subject to § 3163 to receive indemnification. For example, in order to determine the appropriate premium charge for indemnifying such policies, the MCCA would have the complicated task of determining the future cost of providing the indemnification. If paying for such indemnification was optional, the MCCA would have the difficult task of anticipating how many insurers would chose to receive, and pay for, indemnification and how many would not. On the other hand, requiring insurers that file

a § 3163(2) certification to pay an MCCA premium for indemnification would likely reduce the number of insurers that would chose to file the certification. Therefore, there was a rational basis for the Michigan legislature to adopt the § 3104 indemnification scheme because it is easier to administer than would be a scheme that provides indemnification for payments made under § 3163. In addition, by providing indemnity for insurance policies with the coverages required by the No Fault Act, the legislature was covering the group of insureds who were most likely to have an accident in Michigan, and thereby have claims under the No Fault Act.

**V.     CONCLUSION**

Accordingly, the MCCA's, State of Michigan's, and Titan Insurance Company's motions to dismiss are **GRANTED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani  
MARIANNE O. BATTANI  
UNITED STATES DISTRICT JUDGE

DATED: December 8, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

<u>s/Bernadette M. Thebolt</u>

DEPUTY CLERK